Mary L. MURPHY, Appellant
(Plaintiff below),

v.

Keith SCHILLING, Trustee of Fairfield Township, Tippecanoe County, Indiana, Ronald Elly, James F. Murtaugh and Albert E. Martin, Individually and as members of the Advisory Board of Fairfield Township, Tippecanoe County, Indiana, and Theodore L. Sendak, Attorney General of the State of Indiana, Appellees (Defendants below).

Nos. 2–577A186, 579S135.

Supreme Court of Indiana.

May 22, 1979.

Edward Chosnek, Lafayette, for appellant.

Theo. L. Sendak, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, J. Frederick Hoffman, Lafayette, for appellees.

GIVAN, Chief Justice.

This cause is on petition to transfer under the emergency provisions of AP. 4(A)(10). The facts, according to a stipulation by the parties, are that plaintiff-appellant Mary L. Murphy is a bona fide resident of Fairfield Township of Tippecanoe County. On November 5, 1974, Murphy was duly elected as a member of the Advisory Board of Fairfield Township, which election was certified the following day by the Clerk of the Tippecanoe Circuit Court. However, when Mrs. Murphy attempted to assume the duties of the office she was refused on the ground that she was not qualified to take office under IC § 17–4–28–1 [Burns 1974]. The statute requires members of the Advisory Board to be resident freeholders of the township. Murphy owns no real estate in Fairfield Township. Hence, at the first annual meeting of the Advisory Board, they appointed Albert E. Martin to fill the vacant position.

In September, 1975, Murphy sued the Township Trustee, the members of the Advisory Board and the Attorney General of Indiana for her commission on the ground that the freehold requirement constitutes an arbitrary denial of due process of law and equal protection under the Fourteenth Amendment to the United States Constitution and Article I, §§ 12 and 23 of the Constitution of Indiana. Following the stipulation of facts, the trial court rendered judgment for the defendants.

The appeal was filed in the Court of Appeals and was fully briefed by September, 1977. However, on September 21, 1977, appellant Murphy filed a petition to transfer, alleging that only 15 months remained in the 48-month term for which she originally was elected. She therefore urged this Court to grant transfer immediately and render a final disposition of the issues raised. Unfortunately, due to an error in the handling of the case by this Court, the case bundle was misplaced. The oversight was brought to our attention when earlier this year the appellees filed a motion to dismiss the appeal as moot, since the term of office for which Murphy was elected had expired. The appellant has in no way contributed to the delay in the decision of her case by this Court. She has filed a brief in opposition to the motion to dismiss and has specifically requested us to decide the issues arising in the case. Since the questions raised by this appeal are likely to recur, and since the delay was the fault of this Court and not that of appellant, we will decide the issues on their merits. The motion to dismiss is hereby overruled.

The traditional view that legislation will be sustained against an equal protection challenge if it is shown to have any rational or reasonable relation to a legitimate State purpose has in recent years been refined by decisions of the United States Supreme Court. Where the statute involves legislative classifications based upon "suspect criteria" or affecting "fundamental rights", the enactment will now be upheld only if it is shown to be necessary to

implement a compelling State interest. *Schilb v. Kuebel* (1971) 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502; *Shapiro v. Thompson* (1969) 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Appellant argues that because the Township Advisory Board statute involves the "fundamental right" to hold public office and employs a "suspect classification" based on wealth, we should apply this exacting level of judicial review in adjudging its constitutionality.

It is somewhat unclear whether a factual situation, as in the case at bar, is to be treated under the due process clause or the equal protection clause of the Fourteenth Amendment. See *Zablocki v. Redhail* (1978) 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (Stewart, J. concurring); *San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (Stewart, J. concurring). Nevertheless, since appellant alleges the statute violates both constitutional provisions, we will consider the contentions together.

■ It has been a longstanding principle of constitutional law that where a state grants the franchise for the purpose of selecting persons to serve in public office, it may not also deny the franchise to certain persons in an arbitrary or capricious manner. Any classifications limiting the franchise "must be tailored so that the exclusion . . . is necessary to achieve the articulated state goal." *Kramer v. Union Free School District* (1969) 395 U.S. 621, 632, 89 S.Ct. 1886, 1892, 23 L.Ed.2d 583, 592. *See also Wesberry v. Sanders* (1964) 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481. However, the mere right to vote where granted by the legislature does not *ipso facto* create the right to hold public office. Our Constitution has committed to the General Assembly the right to determine what additional offices shall be created and the manner in which they shall be filled. There is no constitutional or innate right to hold public office. Offices created by the legislature are privileges; aspirants to such offices must strictly comply with the conditions of officeholding. *State ex rel. Workman v. Goldthait* (1909) 172 Ind. 210, 87 N.E. 133.

As the Court stated in *Hovey v. State ex rel. Riley* (1889) 119 Ind. 386, 391, 21 N.E. 890, 891:

"Offices of the class under immediate mention are not such as every elector may justly claim a right to hold solely on the ground that he is a voter, and all voters are entitled to hold offices, but they are offices which the Legislature may restrict to competent persons by prescribing what shall be the qualifications of those who enter them. It is within the authority of the Legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience."

However, the General Assembly has not been given carte blanche to create statutory restrictions on office-holding. No qualifications may be arbitrary or capricious; rather, they must be reasonable and based upon substantial grounds which are natural and inherent in the subject matter of the enactment. *State ex rel. Buttz v. Marion Cir. Ct.* (1947) 225 Ind. 7, 72 N.E.2d 225. Where an absolute requirement for holding public office arbitrarily and unfairly precludes bona fide candidates from service without a legitimate purpose to justify the exclusion, the statute will not survive constitutional attack on equal protection grounds. *Lubin v. Panish* (1974) 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702; *Bullock v. Carter* (1972) 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92.

In the case at bar, so long as the statutory restrictions on eligibility for holding the office of Township Advisory Board member are not arbitrary but bear a rational relation to the legitimate purpose of the statutory scheme, they will not be deemed violative of the rights to equal protection and due process of law. *State ex rel. Miller v. McDonald* (1973) 260 Ind. 565, 297 N.E.2d 826, *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974); *Forks v. City of Warsaw* (1971) 257 Ind. 237, 273 N.E.2d 856, *cert. denied*, 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80 (1972).

■ The original township advisory board statute was enacted in 1899. Its purpose was to provide greater protection for township taxpayers, who bore the entire burden of supporting schools and township government. *Miller v. Jackson Township* (1912) 178 Ind. 503, 512, 99 N.E. 102, 106. The act empowers the board to oversee the operations of the township trustee by requiring the trustee to submit for the board's approval an annual budget for the coming year and an annual report of his expenditures for the previous year. IC §§ 17–4–28–1, 3, 5. With but three exceptions, the board has sole authority to recommend to the county council the salaries and benefits to be paid to all elected and appointed officers of the township. IC §§ 17–4–28–1.1, 1.3, 1.5. The board is authorized to levy taxes on the real property in the township to pay for all expenses. IC §§ 17–4–28–1, 2. The board is further vested with the duty to borrow money in the event an emergency exists for the expenditure of any sums not included in the existing estimates and levy. IC § 17–4–29–3. The borrowed funds, as well as interest thereon, will of course eventually be paid by the taxes generated from levies on real property in the township. In the case at bar, 99.28% of all locally-generated tax revenues emanate from such levies on real property.

The concern of the legislature that township taxpayers be protected by such advisory boards clearly is twofold: that the revenue generated from property taxes be expended in a frugal and efficient manner and that township property tax rates be maintained at a fair and equitable level which will not impose an intolerable burden upon those bearing the weight of the tax. Freeholders are the sole source of this tax revenue. They have a direct stake in the expenditure of local monies and the imposition of local property tax rates. Conversely, those township residents who do not own real property have only an indirect concern over property taxes. While we recognize the proposition in *City of Phoenix v. Kolodziejski* (1970) 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523, that a renter may effectively pay a share of local property taxes through his rental payments, we think this interest is too far removed from the actual levying of the tax to justify striking down the particular statute in the case at bar. Whether the owner of real property charges his tenants additional rent to cover his property tax assessment is immaterial, for the owner must in all cases assume responsibility for their ultimate payment. Furthermore, since non-freeholders pay no property taxes, there is little, if any, incentive for them to treat tax-paying freeholders with equity and fairness in the imposition of property tax rates. To hold this statute unconstitutional would be to create the perverse situation whereby those who pay the taxes to support township government would be at the mercy of those who do not.

■ The statutory requirement that only resident freeholders may serve on township advisory boards has a sound and substantial basis in law and in fact. The restriction is not arbitrary, capricious or unreasonable, but bears a rational relation to the legitimate purpose for which the statute was enacted. We therefore hold it does not operate to deprive non-freeholders of equal protection or due process of law by reason of a denial of a fundamental right.

■ Appellant further contends that because the criteria of property ownership to serve on the township advisory board is based on the "traditionally disfavored" classification of wealth, the statute should be subjected to the higher level of judicial review. Under *Harper v. Virginia Board of Elections* (1966) 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169, it is argued, the statute should be declared unconstitutional. We cannot accept the proposition. In the more recent case of *San Antonio Independent School District v. Rodriguez* (1973) 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, Mr. Justice Powell addressed a similar issue, citing two factors as controlling. First, it was not shown in that case that the school-financing system operated to the peculiar disadvantage of any class fairly definable as indi-

gent or as composed of persons whose incomes are beneath the designated poverty level. 411 U.S. at 22–23, 93 S.Ct. at 1291, 36 L.Ed.2d at 36–37. Here, as in *Rodriguez*, appellant has not demonstrated that the freehold requirement operates to discriminate against indigents. No evidence has been adduced tending to show any relationship between wealth and the ownership of real property in Fairfield Township or in the State as a whole. In fact, we would note that it is not all that uncommon to find persons who are quite wealthy living in rented apartments and persons officially classified as indigent residing on real property which they own.

Second, in *Rodriguez* the lack of personal financial resources did not engender an absolute deprivation of education. 411 U.S. at 23, 93 S.Ct. at 1291–2, 36 L.Ed.2d at 37. Nor is such a direct correlation shown in the case at bar. Admittedly, the failure to own real property occasions a complete denial of the opportunity to serve on a township advisory board. However, as previously noted, we see no basis for arbitrarily classifying those who own real property and those who do not into two narrowly-defined classes of haves and have-nots. In other words, the fact that a person is officially termed an indigent by reason of his annual income does not per se mean that such person will not be an owner of real property and consequently will not be permitted to serve on the board.

In essence, appellant asks this Court to "extend its most exacting scrutiny to review a [statute] that allegedly discriminates against a large, diverse, and amorphous class, unified only by the common factor" of being non-freeholders in the township. As Mr. Justice Powell concluded, the statute has none of the traditional indicia of suspectness: the class is not "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." 411 U.S. at 28, 93 S.Ct. at 1294, 36 L.Ed.2d at 40. Accordingly, we must conclude that the statute restricting the office of township advisory board member to freeholders is not an impermissible wealth classification. Thus, applying the traditional test for legislative classifications, we find that this statute is reasonable in scope, rational in purpose and does not offend the equal protection clause.

Appellant, however, points to the case of *Turner v. Fouche* (1970) 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567, the facts of which are quite similar to those at bar. In that case, the Court struck down as invidiously discriminatory a statute requiring school board members to be freeholders. Nevertheless, the Court refused to exclude the "possibility that other circumstances might present themselves in which a property qualification for office-holding could survive constitutional scrutiny . . . ." 396 U.S. at 364, 90 S.Ct. at 542, 24 L.Ed.2d at 581. It is our opinion that the statute in the case at bar is the type of statute to which the Supreme Court was referring. In the *Turner* case the Court rested its decision primarily on the fact that only 15% of the local school budget was funded by local taxes on real property. Here, however, the record does not indicate the percentage of the township's budget derived from real property taxes. The only relevant figure in the stipulation of facts in this case is that in Indiana, property taxes constitute 99.28% of all locally-generated tax revenues. No comparable figure appears in the *Turner* opinion, and we are not at liberty to infer such a fact from that case. Furthermore, we think that the fact that property taxpayers bear the burden of nearly 100% of all locally-generated tax revenues underscores our State's vital interest in utilizing this particular statutory scheme. Our statute permits only those who pay local taxes to serve on the body which sets the rates for such taxes. We therefore hold that this statute is not unconstitutional under the *Turner* rule.

The provision requiring township advisory board members to be resident freeholders does not transgress the guarantees of due process and equal protection within the United States and Indiana Constitutions.

Accordingly, transfer is granted and the judgment of the trial court is affirmed.

HUNTER, PIVARNIK and PRENTICE, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

In *Turner v. Fouche*, (1970) 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567, the United States Supreme Court applied the equal protection clause to qualifications for holding public office. There the Court was faced with a Georgia statute which created school boards, set their size at five members, and required each member of them to be a freeholder. In this case we are confronted with a statute which creates the township advisory board, sets its membership at three, and requires that each member of it be a freeholder. Both boards make financial decisions which influence the delivery and availability of government services to freeholder and nonfreeholder. In Indiana, as in Georgia, a freeholder is any person who owns real estate. Both the Georgia school board and the Indiana township advisory board have statutory authority to levy taxes on real estate situated within their jurisdictions. This authority renders the real property taxpayers in both cases subject to the danger of excessive taxation. Indeed, in this regard, since the Georgia board levied for school purposes, while the Indiana board levied only to pay for the vestiges of township government, a strong case can be made out that any such danger was much greater in the Georgia situation. The Supreme Court concluded that the freeholder requirement in the Georgia scheme was invidiously discriminatory in violation of the equal protection clause. I regard that case as applicable and decisive here and as requiring that we likewise invalidate the freeholder requirement for holding the Indiana office of township advisory board.