**Robert J. QUINN, Jr. and Patricia J. Kampsen, Plaintiffs,**

**v.**

**The STATE OF MISSOURI, et al., Defendants.**

**No. 87–4492–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

March 15, 1988.

Kevin M. O'Keefe, St. Louis, Mo., and Jess W. Ullom, Clayton, Mo., for plaintiffs.

Simon B. Buckner, Asst. Atty. Gen., Kansas City, Mo., for defendants State of Mo. and Governor John D. Ashcroft.

Andrew J. Minardi, Associate County Counselor, Clayton, Mo., for defendant Gene McNary.

Eugene P. Freeman, Deputy City Counselor, St. Louis, Mo., for defendant Vincent C. Schoemehl, Jr.

Kenneth F. Teasdale and Thomas Cummings, St. Louis, Mo., for defendants Members of St. Louis City/County Bd. of Freeholders.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This is a class action for declaratory and injunctive relief in which plaintiffs challenge the constitutionality under the United States Constitution of Article VI, §§ 30(a) and 30(b) of the Missouri Constitution of 1945, as amended. These sections provide for the selection and operation of a board of freeholders ("Board") to propose a plan for intergovernmental relations between St. Louis County and the City of St. Louis, and for the submission of such plan to the electorate of those political subdivisions. This Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331 and § 1343(3).

The named plaintiffs include Robert J. Quinn and Patricia J. Kampsen. Both plaintiffs are residents of St. Louis County, Missouri, and are taxpayers, registered voters and electors of St. Louis County, and non-freeholders, owning no real property. They bring this case on their own behalf and on behalf of the entire class consisting of resident taxpayers, electors and non-freeholders of St. Louis County, Missouri, and of the City of St. Louis, Missouri, and consisting of non-freeholder residents of the State of Missouri not residing in either the City of St. Louis or St. Louis County.

The State of Missouri has been named as a defendant because §§ 30(a) and (b) is a state constitutional enactment, adopted on November 4, 1924. Section 30(a) was amended November 8, 1966.

Defendant John D. Ashcroft is Governor of the State of Missouri; Defendant Gene McNary is the County Executive of St. Louis County; and Defendant Vincent C. Shoemehl, Jr. is the Mayor of the City of St. Louis. These defendants are the authorities responsible for appointing members to the board of freeholders, organized pursuant to §§ 30(a) and (b).

Defendants Joseph C. Balcer, Robert L. Bannister, Sandra H. Bennett, Alan S. Boston, Claude Brown, William G. Cocos, Jr., Jo Curran, Thomas P. Dunne, C. Fran Emerson, Gretta Forrester, Albert H. Hamel, William J. Harrison, Wayne L. Millsap, J.P. Morgan, Catherine Rea, Daniel Schlafly, Henry S. Stolar, Lucille Walton and Margaret Bush Wilson are members of the board of freeholders ("the Board").

This action was originally filed on November 10, 1987, and amended on January 21, 1988, to name the appointing authorities and board members as additional defendants. Plaintiffs also voluntarily dismissed William L. Webster, Attorney General of the State of Missouri, as a defendant on January 21, 1988. On January 25, 1988, this Court issued a temporary restraining order which was affirmed and modified by the United States Court of Appeals for the Eighth Circuit on February 11, 1988, 839 F.2d 425. The modified restraining order was continued after a full trial on the merits on February 17, 1988.

## I. CLASS CERTIFICATION AND STANDING

Plaintiffs seek to have this action certified as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Court first concludes that all prerequisites set forth in Rule 23(a) have been met.[1]

In evaluating whether the numerosity requirement is met, the Court considers the number of persons in a proposed class, the nature of the action and the inconvenience of trying individual suits. The Court finds that the number of non-freeholder taxpayer electors who reside in the City of St. Louis, St. Louis County, and the State of Missouri is sufficiently numerous. No arbitrary rules regarding the necessary size of classes have been established. *Paxton v. Union National Bank*, 688 F.2d 552, 559 (8th Cir.1982).

The commonality requisite set forth in Rule 23(a) does not demand that every question of law or fact be common to every member of the class. *Id.* at 561. Rather, the issues are sufficiently common "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.*

Similarly, the claims of the representative parties are typical of those of the class if they emanate from the same "legal theory, remedial theory or offense" as those they represent. *U.S. Fidelity & Guaranty v. Lord*, 585 F.2d 860, 870 (8th Cir.1978). Here, the necessary commonality and typicality exist where the challenged constitu-

1. Rule 23(a) sets out the prerequisites to a class action:

 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

tional provision requires that one must be a freeholder, or real property owner, to be appointed as a member of the board of freeholders. All class members, as non-freeholders, would be automatically excluded, even if they were otherwise qualified.

The fourth component of Rule 23(a) focuses on whether the class representatives have common interests with the class members and would vigorously prosecute the interests of the class through qualified counsel. *Paxton,* 688 F.2d at 562–63. Here, there are no apparent conflicts with the interests of the named plaintiffs and the rest of the class within the scope of this litigation.

Further, this is the type of case appropriate for a 23(b)(2) class since the defendants have acted on grounds generally applicable to all members of the class and final injunctive and declaratory relief would be the appropriate remedy.[2] Hence, plaintiffs are properly named representatives who may act on behalf of the following class, which the Court now certifies:

> Resident taxpayers, electors and non-freeholders of St. Louis County, Missouri, and of the City of St. Louis, Missouri and consisting of non-freeholder residents of the State of Missouri not residing in either the City of St. Louis or St. Louis County.[3]

In addition to opposing class certification, Defendant McNary has also challenged plaintiffs' standing to sue, alleging that "[t]here is no case or controversy for this Court to decide and any proceeding by this Court would be contrary to Article III of the United States Constitution." Supplemental Answer of Defendant Gene McNary to Plaintiffs' Second Amendment by Interlineation of First Amended Class Action Complaint. This answer was filed February 25, 1988. At the hearing on February 17, 1988, this same issue was raised by counsel for the Board.

However, previous to these dates, these defendants had filed as plaintiffs in a parallel case in State Court on February 16, 1988, which involves identical parties and addresses the same federal question as in this suit. In the petition in the Circuit Court of St. Louis County, the following is alleged:

> 20. A controversy therefore presently exist [sic] between Plaintiffs and Defendants as to whether the Board is a constitutionally constituted body and whether Plaintiff Board Members were properly appointed and whether the Plaintiff Board Members can exercise the mandate given to them by the people of the County of St. Louis and City of St. Louis.
>
> 21. The interests of Plaintiffs and Defendants are in fact adverse, the parties hereto have legally protectable interests involved, and it is timely that a judicial determination be made of the questions involved.

These averments certainly rebut any objections to judiciability. Under *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976), plaintiffs must allege an "injury in fact, that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Article III jurisdiction." In order to have standing:

> (1) Plaintiff must allege an actual or threatened injury as a result of the conduct of the defendant,
>
> (2) the injury alleged by plaintiff must be fairly traceable to the action of the defendant that is challenged in the lawsuit, and

---

2. Rule 23(b)(2) provides:
 An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

3. Although defendants have opposed class certification, the Court notes that in the petition filed by all defendants in the Circuit Court of the County of St. Louis, No. 572794, on February 16, 1988, Robert Quinn and Patricia Kampsen are named as defendants "Individually, and on behalf of all other similarly situated individuals." See also ¶ 8 of the State complaint.

(3) the injury alleged by plaintiff must be likely to be redressed by a favorable decision of the court.

*Belles v. Schweiker,* 720 F.2d 509, 513 (8th Cir.1983), *citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 752 (1982).

Moreover, in *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), the Supreme Court explicitly upheld a class of non-freeholders' standing to challenge a similar restriction for membership on a school board, even though no allegation was made that the representative nonfreeholder wished to serve on the board or that he was harmed in any other way by the freeholder limitation. Here, Article III requirements are satisfied.

## II. VENUE

■ Defendant McNary's contention that venue in this action does not lie in the Western District of Missouri also must be rejected.

Title 28 U.S.C. § 1391(b) states that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." However, in civil actions not of a local nature where, as here, all defendants reside within the state but in different districts, § 1392(a) permits venue in any district where one or more defendants reside. This provision is satisfied where plaintiffs challenge the constitutionality of a state constitutional provision and defendant John Ashcroft, the Governor, and defendant Morgan, a board member, reside in the Western District of Missouri.

The Court is not persuaded by defendant McNary's claim that this is a "local action" that must be brought in the Eastern District. The challenged law is a provision in the State Constitution, not a local ordinance or city charter. Section 30 limits service on the Board to freeholders and specifically provides for the appointment of one freeholder who does *not* reside in either the City or County of St. Louis. This potential board member may reside in any other part of the state. Therefore, venue is proper in this district.

■ Regardless of the propriety of venue here, defendants urged transfer of this case to the District Court for the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, a decision whether to transfer a case lies within the discretion of the district court and the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 353 (8th Cir.1984). Here, the convenience of witnesses and parties and the interests of justice do not outweigh plaintiff's choice of forum. Thus, on January 25, 1988, this Court overruled the defendants' motion to transfer under § 1404(a).

## III. ABSTENTION

### A. Younger Abstention

Defendants argue that this Court should abstain under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because a parallel state action was filed prior to the hearing on the motion for a preliminary and permanent injunction on February 17, 1988.

■ Under *Younger,* a federal court should not enjoin a state proceeding commenced after the filing of a federal case but prior to proceedings of substance on the merits in the federal suit. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). *Younger* abstention is required if (1) there are pending state judicial proceedings, (2) the state proceedings implicate important state interests, and (3) the state proceedings provide an adequate opportunity to raise federal questions.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

The third requirement is clearly met: the declaratory judgment action filed in state court raises the same federal question as in this case, in addition to the State constitutional issue.

As to the first requirement, state proceedings may be considered "pending" for *Younger* abstention only when such activity is initiated "before any proceedings of substance on the merits have taken place in federal court," *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984), *quoting Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975). "In other cases, federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Housing,* 467 U.S. at 238, 104 S.Ct. at 2328.

Here, the federal action in this Court was initiated and a temporary restraining order (TRO) was issued and appealed to the Eighth Circuit Court of Appeals prior to the filing of the state case. Treating the TRO as a preliminary injunction for jurisdictional purposes, the Eighth Circuit had even issued its *per curiam* opinion affirming yet modifying the TRO before the state action was commenced. In fact, defendants did not file their complaint in the St. Louis Circuit Court until February 16, 1988, one day before the hearing on the preliminary injunction on February 17.

■ Although a denial of a TRO has not been considered "a proceeding of substance on the merits," *Hicks,* 422 U.S. at 338, 95 S.Ct. at 2286, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566–67, 45 L.Ed.2d 648 (1975), it may be that issuance of a TRO *is* a proceeding of substance on the merits. The Supreme Court left this possibility open in *Midkiff,* 467 U.S. at 239, 104 S.Ct. at 2328. Certainly, when a preliminary injunction has been granted, the action has "proceeded well beyond the 'embryonic stage' ... and considerations of economy, equity, and federalism counsel against *Younger* abstention at

that point." *Id.* Nevertheless, it is not essential for this Court to decide whether this case involves a "pending" state proceeding that satisfies the first *Younger* requirement because the second *Younger* essential has not been met.

*Younger* abstention is not appropriate unless "the federal action would affect important state interests that are "vital to the operation of state government" and where "the state's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the states and the National Government." *Polykoff v. Collins,* 816 F.2d 1326, 1332 (9th Cir.1987) *quoting* (respectively) *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, ——, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986), and *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987).

As in *Polykoff,* however, this case does not implicate the kind of state interest that warrants *Younger* abstention because the state action is "not the type of enforcement proceeding that has justified abstention under this doctrine." *Polykoff,* 816 F.2d at 1332. *See, e.g. Dayton Christian Schools, Inc.,* 106 S.Ct. at 2723–24 (state administrative civil rights law proceeding); *Middlesex,* 457 U.S. at 434–35, 102 S.Ct. at 2522–23 (attorney disciplinary proceeding); *Moore v. Sims,* 442 U.S. 415, 423–35, 99 S.Ct. 2371, 2377–83, 60 L.Ed.2d 994 (1979) (child custody proceeding); *Juidice v. Vail,* 430 U.S. 327, 334–37, 97 S.Ct. 1211, 1216–18, 51 L.Ed.2d 376 (1977) (civil contempt proceeding); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (enforcement of state welfare program); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–07, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975) (state nuisance action); *Younger,* 401 U.S. at 43–49, 91 S.Ct. at 750–53 (state criminal proceeding). Nor does the Supreme Court's ruling in *Pennzoil* require abstention here. In *Pennzoil,* comity mandated abstention because the federal case involved a challenge to the very "processes by which the State compels compliance with the judgment of

its courts," an important state interest. *Pennzoil,* 107 S.Ct. at 1527.

Citing the above cases, the *Polykoff* court recognized that abstention was not required where the pending state action sought a *declaratory judgment* on the same federal issue as that involved in the federal action: whether Arizona's obscenity statute violated the federal constitution. "Considerations of comity do not counsel abstention under these circumstances." *Polykoff,* 816 F.2d at 1333 (citing *Playtime Theatres, Inc. v. City of Renton,* 748 F.2d 527, 533 (9th Cir.1984) for the proposition that *Younger* abstention is inappropriate when the state action seeks declaratory relief rather than enforcement of a law).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to the parties to repair to State court would clearly serve an important countervailing interest." *Id.* Federal courts have an interest in the orderly functioning of the federal judicial system and in the preservation and exercise of their jurisdiction. "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." *Polykoff,* 816 F.2d at 1333, *quoting Town of Lockport v. Citizens for Community Action at the Local Level, Inc.,* 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977).

In this case, no state enforcement proceeding is pending. The parallel state action seeks a declaratory judgment on the same federal issue as that presented before this Court for declaratory judgment and injunction.[4] *See Polykoff,* 816 F.2d at 1333. Thus, *Younger* and its progeny have no application here.

**4.** As will be noted later in the portion of this Order dealing with *Pullman* abstention, the issues in the two suits are essentially identical even though the state case *also* asks whether the

### B. Pullman Abstention

■ Defendants also argue that this Court should abstain from deciding plaintiffs' motion for a preliminary and permanent injunction under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention instructs "that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing,* 467 U.S. at 236, 104 S.Ct. at 2327. Thus, *Pullman* abstention presupposes two conditions: (1) there must be an unsettled issue of state law, and (2) there must be a possibility that the state law determination will moot the federal constitutional question raised. *National City Lines, Inc. v. LLC Corp.,* 687 F.2d 1122, 1126 (8th Cir. 1982). However, in order for *Pullman* to apply, the state law must be "obviously susceptible of a limiting instruction" and "a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary" is insufficient. *Hawaii Housing,* 467 U.S. at 237, 104 S.Ct. at 2327 (emphasis in original). *Pullman* abstention is limited to uncertain questions of state law because, as noted earlier in the *Younger* discussion, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244.

■ Defendants contend that Article VI, Sections 30(a) and (b) of the Missouri Constitution present two unsettled questions of state law which should be interpreted by Missouri state courts to see if there is any basis for a federal constitutional challenge. First, defendants insist that it is not clear from the language of Section 30 whether one must be a "freeholder" to be a member of the board of freeholders. The second question depends on the first: if a Missouri court were to find that being a "freehold-

Board of Freeholders is constitutionally appointed in accordance with the "equal rights and opportunities" clause of the Missouri Constitution, Article I, § 2.

er" is a prerequisite to membership, does the term "freeholder" as used in Section 30 denote one who owns real property?

Neither question raises a real doubt as to the unambiguous language in Section 30. Section 30(a) provides for a

board of freeholders consisting of nineteen members, nine of whom shall be electors of the city and nine electors of the county and one an elector of some other county. (emphasis supplied)

Section 30(b) adds that

The freeholders of the city and county shall fix reasonable compensation and expenses for the freeholder appointed by the governor.... (emphasis supplied).

The challenged provisions of the State constitution are clear on their face that each member of the board shall be a freeholder. Defendants' interpretation that the term "freeholder" is a meaningless label is strained at best. While it is true that members must be electors, Section 30 clearly sets this forth as an additional requirement.

Similarly, the meaning of the term "freeholder" is certain, and not susceptible of being construed in a way that would render it unnecessary to examine its impact under the equal protection provisions in the United States Constitution. This is true even though no Missouri decisions have defined the term "freeholder," as specifically used in Section 30.

The term "freeholder" has also been employed in Sections 18(g) and 32(b) of Article VI and in Article I, § 26, of the Missouri Constitution, in addition to its use more than forty-five times in Missouri statutes. Hence, the Missouri Supreme Court's construction of the term in these other contexts is instructive.

In Shively v. Lankford, 174 Mo. 535, 74 S.W. 835 (1903), the Missouri Supreme Court defined the word "freeholder" as used in the predecessor to the current constitution:

That one may be a freeholder and not a householder, or a householder and not a freeholder, seems to be too plain for argument. "Householder" refers to the

civil status of a person, not his property, and a man may be a householder without owning real estate, or any interest therein, whereas a freeholder is one who owns "a freehold estate; that is, an estate in lands, tenements, or hereditaments of an indeterminate duration, other than an estate at will or by suffrance, as in fee simple, fee tail or for life, or durante viduitate, or during coverture, etc." [citations omitted].

Id., 74 S.W. at 838.

In Article I § 26, the Missouri Constitution provides for "a jury or board of commissioners of not less than three freeholders" to determine the compensation for property taken by eminent domain. In reference to a similar requirement in the Kansas City Charter, the Missouri Supreme Court allowed the trial record in such case to be supplemented to include voir dire material which showed that the jurors were asked "whether each of them had real estate in his own name" in order to determine whether each juror qualified as a "freeholder."

"Freeholder" is defined in Mo.Rev.Stat. § 160.011(3) (1986) as "any person who has an estate in land which may be inherited or an estate in land for life or for an indeterminate period, including any tenant by the entireties," for purposes of twelve chapters of the statutes dealing with education and libraries. Of course, this is consistent with its use in the Missouri Constitution and early interpretations of the term by the Missouri Supreme Court.

■ Missouri courts employ the same rules in construction of constitutional provisions as those used in statutory interpretation, even though the constitutional terms are given a broader construction due to their more permanent nature. Roberts v. McNary, 636 S.W.2d 332, 335 (Mo.1982) (en banc), citing Boone County Court v. State of Missouri, 631 S.W.2d 321, 325 (Mo.1982) (en banc). Still, "[c]rucial words must be viewed in context and it must be assumed that words used were not intended to be meaningless." Roberts, 636 S.W.2d at 335. In ascribing meaning to the specific words

used in the State constitution, the *Roberts* court further elaborated:

This Court has recognized that in construction of constitutional provisions, it should undertake to ascribe to words the meaning which the people understood them to have when they adopted the provision. "The framers of the Constitution and the people who adopted it 'must be understood to have employed words in their natural sense, and to have intended what they said.' This is but saying that no forced or unnatural construction is to be put upon their language." [citations omitted].

*Id.* Defendants' suggestion that Section 30 does not require members to be freeholders or that "freeholder" does not refer to an owner of real property is an attempt to place a forced and unnatural construction on this constitutional provision.

The meaning of the words in the provision, as conveyed to the voters is presumed to be their natural and ordinary meaning. The ordinary and commonly understood meaning is derived from the dictionary. Moreover, the grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed. Of course, this Court must give due regard to the primary objectives of the provision under scrutiny as viewed in harmony with all related provisions, considered as a whole. [citations omitted].

*Id.*

Black's Law Dictionary [5th Ed. 1979] defines "freeholder" as "One having title to realty; either of inheritance or for life; either legal or equitable title."

Webster's New Twentieth Century Dictionary defines "freeholder" as "the possessor of a freehold," which is defined as "the holding of a piece of land, an office, etc. for life or with the right to pass it on through inheritance."

The American Heritage Dictionary of the English Language (1981) states that a "freehold" is "an estate held in fee or for life."

The Missouri Supreme Court provides the following definition of a freehold estate in *Farmers Drainage District v. Sinclair Refining Co.*, 255 S.W.2d 745 (Mo.1953):

Estates or interests in land are of two kinds: Estates of freehold and estates of less than freehold. A freehold estate is defined as any estate of inheritance or for life in either a corporeal or incorporeal hereditament existing in or arising from real property of free tenure. Estates less than freehold are, as the term signifies, estates or interests in land less than a freehold, and are of three kinds: Estates for years, estates at will and estates of sufferance. [citations omitted].

*Id.* at 749. Finally, the United States Supreme Court and other federal courts have unambiguously recognized that a "freeholder" requirement is one that restricts those who do not own real property. *E.g.*, *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

Defendants have accused plaintiffs of "slavishly clinging to an ancient definition of common law property" in directing the Court to the foregoing authority which defines the term "freeholder." However, ironically, defendants themselves have cited to an outworn 1914 edition of Bouvier's Law Dictionary, Third Revision, which refers to a "freeholder" also as "one who is not a slave." Nor is the Court persuaded by the defendants' reliance on Mo.Rev.Stat. § 273.110 for the proposition that a freeholder may be defined as an "owner or custodian of livestock or poultry." This simply is *not* the "ordinary and commonly understood" meaning of the term.

More importantly, the standards actually applied by all three appointing authorities make it clear that appointment to the Board of Freeholders was restricted to persons owning real property. Stipulation of Facts, ¶s 15, 17, 19 and 21.

The petition which was filed with St. Louis County and City election officials in order for the Board to be appointed is labeled: "A PETITION to establish a board of St. Louis area *property owners (freeholders)....*" (emphasis supplied).

**1432**

Stipulation of facts, ¶ 15 and accompanying Exhibit 1.

Even though Defendant McNary's *initial* list of desired qualifications did not include real property ownership, his Executive Assistant, William Skaggs, checked the County Assessor's records to determine that all of McNary's candidates were indeed real property owners after the County Counselor opined that this was an additional requirement. Stipulation of Facts, ¶s 15 and 17.

Defendant Schoemehl also did not *initially* consider ownership in real property in developing his list of potential candidates. However, when the City Counselor's office stated that this was a necessary qualification, Reverend Paul C. Reinert, a potential candidate who does not own real estate, was dropped from consideration. Stipulation of Facts, ¶ 19.

Defendant Ashcroft included in his list of five criteria that the appointee have an ownership interest in real property. Stipulation of Facts, ¶ 21.

█ Thus, it is clear that facially and as applied, Article VI, § 30 of the Missouri Constitution requires that the membership on the board of freeholders is restricted to owners of real property (who are also electors). Therefore, the present case does not involve an ambiguous or unsettled question of state law, and for that reason *Pullman* abstention does not apply to this case.[5] *See National City Lines,* 687 F.2d at 1126.

#### C. Colorado River Abstention

█ Finally, this case does not fall within the narrow *Colorado River* abstention doctrine, which permits dismissal of the federal action in view of a concurrent state proceeding on the basis of a concern for judicial administration and efficiency. *Colorado River,* 424 U.S. at 817–18, 96

S.Ct. at 1246. As between state and federal courts, the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction." *Id.* Only "exceptional circumstances" permit dismissal of the federal suit in such cases and are "considerably more limited than the circumstances appropriate for abstention." *Id.* The *Colorado River* court notes, *inter alia,* the relevant factors of the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation and the order in which jurisdiction was obtained by the concurrent forums. "Only the clearest of justifications will warrant dismissal." *Id.,* 96 S.Ct. at 1247. Such "exceptional circumstances" are not present here. *See also Polykoff,* 816 F.2d at 1334.

#### IV. LACHES

█ Defendant McNary asserts that plaintiffs should be barred from seeking injunctive relief by the equitable doctrine of laches. Laches may be used to bar a lawsuit when the plaintiffs are guilty of (1) unreasonable and unexcusable delay, (2) which results in prejudice to the defendant. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979). Laches is an affirmative defense and the burden of persuasion rests with the defendant. *Id.* at 806. Whether laches should apply is a matter within the sound discretion of the trial court and depends on the facts of each case. *Id.* at 804.

█ Application of the doctrine of laches is clearly inappropriate in this case. The members of the board of freeholders were appointed in September, 1987, and on October 5, 1987, announced their intention to file a final plan by mid-February, 1988. Plaintiffs were aware of this intent within

---

**5.** The Court also rejects defendants' contention that abstention is required because Section 30 must be considered as consistent with the "equal protection" guarantees in Article I, § 2 of the State Constitution, which may obviate the federal constitutional question. "The [United States Supreme] Court has previously determined that abstention is not required for interpretation of parallel state constitutional provisions." *Hawaii Housing,* 104 S.Ct. at 2327, n. 4; *see also Guiney,* 833 F.2d at 1082 (if no clarifying interpretation of the questioned state law is required even if part of an integrated scheme of state constitutional provisions, there is no reason to abstain).

several days and on November 9, 1987, plaintiffs' counsel informed the Board officers that he believed that the freeholder requirement violated the Equal Protection rights of non-freeholders under the United States Constitution. Stipulation of Facts, ¶s 26, 27, 30.

Plaintiffs filed their original complaint in this Court on November 10, 1987, seeking only declaratory relief and naming only William Webster and the State of Missouri as defendants. However, on the same day, defendant Wayne Millsap, the Chairman of the Board, was notified of the action. Two other board members were informed of the suit on November 13. Stipulation of Facts, ¶s 31, 33, 34. Plaintiffs' counsel again addressed the Board on January 4, 1988, again questioning the legality of Article VI § 30. The amended complaint naming the board members and appointing authorities as defendants was filed on January 21, 1988, requesting injunctive and declaratory relief.

Thus, in support of his laches defense, Defendant McNary claims that plaintiffs "sat idly by as time and money were expended" by the Board. By failing to file suit for an injunction against these defendants until late January, defendants insist that they have been caused undue prejudice.

This argument, however, ignores another crucial fact: that is, defendants' own failure to obtain a declaration of the constitutionality of the composition of the Board. The Board retained legal counsel on September 28, 1987. In addition to defendants Ashcroft and McNary, six board members are attorneys. Stipulation of Facts, ¶s 42, 43. As stated earlier, defendant Millsap had actual notice that there was a constitutional challenge at least by November 10, 1987. Yet, defendants took no action to settle the question until filing suit in state court on February 16, 1988, the day before the scheduled hearing on the merits for a preliminary and permanent injunction.

It is well-settled that the equitable defense of laches can be raised only by one who comes into equity with clean hands. *See e.g., United States v. Weintraub*, 613 F.2d 612 (6th Cir.1979). The defendants' own neglect in these cases negates any claim that they have been prejudiced. Plaintiffs' suit is not barred by laches.

## V. CONSTITUTIONALITY OF §§ 30(a) and 30(b)

Plaintiff's challenge to the constitutionality of MO. CONST. art. VI, § 30(a) and (b) is twofold: First, it is claimed that these sections are unconstitutional on their face by the imposition of an economic and social standard which bears no relevance to the competency of a person to serve on the board. Plaintiffs also state that the provisions were unconstitutionally applied, in that appointment to the board was actually limited to those who were ascertained to be owners of real property.

 As discussed earlier in this opinion in the section on *Pullman* abstention, the Court has determined that the term "freeholder" unambiguously refers to one who owns real property. Thus, the constitutional analysis proceeds from that point.

The United States Supreme Court has directly addressed the constitutionality of requiring one who seeks public office to be a freeholder. In *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532 (1970), the Court held that a Georgia statute limiting membership of the school board to freeholders violated equal protection guarantees. Even judged against the traditional test for denial of equal protection, "such classification rests on grounds wholly irrelevant to the achievement of a valid state objective." *Id.* at 362, 90 S.Ct. at 541.

School board membership was not an elective office under the Georgia statutory scheme, just as the Board challenged here is not elected. But this did not limit the Court's ruling in *Fouche:*

We may assume that the appellants have no right to be appointed to the Taliaferro

County board of education. But the appellants and the members of their class do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory classifications. The State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees.

*Id.,* 396 U.S. at 362–63, 90 S.Ct. at 541.

This holding was reaffirmed in *Chappelle v. Greater Baton Rouge Airport District,* 431 U.S. 159, 97 S.Ct. 2162, 52 L.Ed. 2d 223 (1977), when the Supreme Court summarily struck down a Louisiana requirement that conditioned appointed membership on an airport commission on ownership of "property assessed" within that county.

In *Fouche,* the Supreme Court did not determine the proper level of scrutiny to be applied in equal protection cases involving candidates or appointments for public office, since it held that not even a rational basis existed for such a classification.

> Nor does the lack of ownership of realty establish a lack of attachment to the community and its educational values. However reasonable the assumption that those who own realty do possess such an attachment, Georgia may not rationally presume that that quality is necessarily wanting in all citizens of the county whose estates are less than freehold. Whatever objections Georgia seeks to obtain by its 'freeholder' requirement, must be secured, in this instance at least, by means more finely tailored to achieve the desired goal. Without excluding the possibility that other circumstances might present themselves in which a property qualification for office holding could survive constitutional scrutiny, we cannot say, on the record before us, that the present freeholder requirement for membership on the county board of education

amounts to anything more than invidious discrimination. (footnotes omitted).

*Fouche,* 396 U.S. at 364, 90 S.Ct. at 542.

Defendants argue that the freeholder requirement for the Board as described in § 30 should be considered one of the "other circumstances" alluded to in *Fouche,* in which a freeholder requirement could be upheld. In attempting to distinguish *Fouche* and *Chappelle* from the present case, the defendants advance as a rationale that

> [a]n individual's knowledge and experience gained from real property ownership ... [has] a reasonable relationship to the issues decided by the Board of Freeholders. The Board must consider important issues which relate to real property, including the critical question of whether territorial boundaries of the City and County of St. Louis should be altered....

\* \* \* \* \* \*

> An ownership of real property criteria for membership on the Board reflects a judgment that in consideration of the citizenry as a whole, real property owners will generally be better qualified to make the kinds of decisions which a Board must make.

The Court rejects this argument. While it is true that the Board *considers* real property issues, its actions and proposals are considerably broader than that. First, it is notable that the Board's operating funds are provided from general revenue funds of St. Louis County and the City of St. Louis, including taxes paid by members of the plaintiff class.[6] Stipulation of Facts, ¶s 28 and 29.

In *Woodward v. City of Deerfield Beach,* 538 F.2d 1081 (5th Cir.1976), the court concluded that:

> Offices of general governmental responsibility can never be limited to freeholders. The exceptions, if any, must be

---

**6.** $200,000.00 has been appropriated for Board operations, of which approximately $125,000.00 has been spent by January 25, 1988. Stipulation of Facts, ¶ 44.

limited to special purpose governments whose impact are *limited to real property interests.* (emphasis supplied).

*Id.* at 1083, *citing Salyer Land Co. v. Tulare Water District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); *Associated Enterprises, Inc. v. Toltec Watershed Improvement District,* 410 U.S. 743, 93 S.Ct. 1237, 93 S.Ct. 1237 (1973).

Art. VI § 30(a) provides for certain powers to be exercised by the vote of the people of the City and County of St. Louis "upon a plan prepared by a board of free- holders." [7] Five powers are enumerated:

(1) To consolidate the territories and governments of the City and County into one political subdivision under the municipal government of the City of St. Louis; or

(2) to extend the territorial boundaries of the County so as to embrace the territory within the City and to reorganize and consolidate the county governments of the City and County ...; or

(3) to enlarge the present or future limits of the City by annexing thereto part of the territory of the County, and to confer upon the City exclusive jurisdiction of the territory so annexed to the City; or

(4) to establish a metropolitan district or districts for the functional administration of services common to the area included therein; or

(5) to formulate and adopt *any other plan for the partial or complete government of all or any part of the City and County.* (emphasis supplied)

Section 30(b) directs that "[t]he board shall prepare and propose a plan for execution of the powers herein granted and for the adjustment of all matters and issues arising thereunder."

Obviously, the scope of a plan which may be submitted by the Board under §§ 30(a) and (b) extends beyond the type of limited real property issues which may justify a

freeholder requirement for electing directors to specialized water districts as in *Salyer Land Co.,* 93 S.Ct. at 1228–30, and *Associated Enterprises,* 93 S.Ct. at 1238, where landowners primarily benefitted and were burdened by the establishment of such districts.

Moreover, the Board has actually "approved in general concept ... components of a proposed plan" which impacts nonproperty owners considerably in providing for municipal finances. Plaintiff's Trial Exhibit No. 1 includes the following "component" which actually suggests a decrease in County property taxes:

A plan for financing components of the proposed plan which includes a 1% earnings tax in St. Louis County, a rollback of the County property tax, a 6% nonresidential gross receipts tax on utilities in St. Louis County, a modified formula for sales tax distribution in St. Louis County, earnings tax revenue sharing among municipalities and financing provisions for the St. Louis City/County economic development district and metropolitan council.

. . . . .

The Board and staff are working on detailed development of the general concepts included in the plan.

Wayne L. Millsap, Chairman of the Board, verified at trial that this was the Board's tentative proposal.

The Court makes no judgment as to the worthiness of the ultimate goals behind such plan. However, it is clear that the Board's activities are not limited to issues of real property ownership.

Defendants' reliance on *Murphy v. Schilling,* 271 Ind. 44, 389 N.E.2d 314 (1979), and *McClendon v. Shelby Co.,* 484 So.2d 459 (Ala.Civ.App.1985), is unpersuasive. In *Murphy,* the Indiana Supreme Court applied a rational basis test to up-

---

**7.** The parties have stipulated that the estimated cost to the City and County of an election on any plan submitted by the Board would be at least $450,00.00.

hold a freeholder requirement on a township advisory board. *Murphy* is distinguishable because, there, real property taxes constituted 99.28% of all locally generated tax revenues. Nevertheless, this Court disagrees with the *Murphy* conclusion and rejects *McClendon* as dicta which is totally unsound (state appeals court approved as constitutional an Alabama statute which required county planning commissioners to be freeholders).

Finally, defendants cannot equate a property-ownership prerequisite with durational residency requirements. Even where stipulations for candidates' residency have been upheld as Constitutional, freeholder requirements have failed. *E.g., Woodward,* 538 F.2d at 1083–84.

Consequently, the freeholder requirement in Art. VI §§ 30(a) and (b) in the Missouri Constitution creates a wholly irrelevant arbitrary classification which does not serve as even a rational basis for any conceivable valid state objective. Under the reasoning of *Turner v. Fouche,* this is impermissible. *Cf. Williams v. Adams County Board of Elections Commissioners,* 608 F.Supp. 599 (D.C.Miss.1985) (freeholder requirement for county board of supervisors contained in Mississippi state constitution violates equal protection). The Court thus concludes that Art. VI §§ 30(a) and (b) are unconstitutional, facially and as applied in appointing the Board, being in violation of the Equal Protection clause of the United States Constitution.

## VI. SEVERABILITY OF THE "FREE-HOLDER" REQUIREMENT AND REMEDIES

■ Defendants argue that the "freeholder" qualification in Sections 30(a) and (b) is severable from the remaining portions of the sections. In support of this position, the defendants cite to Mo.Rev. Stat. § 1.140 (1980), a statute declaring the portions stricken from Missouri statutes as unconstitutional are generally severable, unless, *inter alia* "the valid provisions,

standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." *Id.* This provision, however, refers only to statutes and does not apply to the Missouri Constitution. Nor does the Missouri Constitution contain a severability clause.

In *State ex rel. St. Louis Firefighters Assoc. Local No. 73 v. Stemmler,* 479 S.W. 2d 456 (Mo.1972), the Missouri Supreme Court recognized that "[p]ublic offices and positions belong to the people and not to the officers upon whom they confer appointive power. The qualifications, tenure, and compensation thereof must be determined by the people or the people will lose control of their government. *This must be done by the representatives the people have authorized to act for them, unless the people themselves have determined these matters by writing them into the Constitution."* (emphasis in original) *Id.* at 460. In Sections 30(a) and (b), the people have chosen to write a "freeholder" requirement into, along with provisions for the Board's compensation ("no compensation"), tenure, and other qualifications. Even though the freeholder requirement does not pass Constitutional muster, the Court is unable to determine that this word can merely be excised from Sections 30(a) and (b) without altering the framers' and people's intent. These sections derive from Art. 9 § 26 of the Constitution of 1875, adopted in 1924. The "freeholder" requirement has remained intact as restated in the current sections of the Constitution of 1945, as amended in 1966. The term "freeholder" is not severable from the remainder of Sections 30(a) and (b). Accordingly, for the reasons stated above, it is hereby

ORDERED that the provisions in Article VI, §§ 30(a) and (b) of the Missouri Constitution are declared unconstitutional in violation of the Fourteenth Amendment to the United States Constitution. It is further

ORDERED that defendants Ashcroft, McNary and Shoemoehl, and their successors in office, are enjoined from appointing representatives to any board of freeholders

organized pursuant to §§ 30(a) and (b). It is further

ORDERED that the defendant members of the board of freeholders are enjoined from exercising any power or authority invested in the Board pursuant to §§ 30(a) and (b). It is further

ORDERED that all defendants are enjoined from expending any public funds for the operation of the board of freeholders except as directly necessary to

(1) Wind up their affairs;

(2) Pay bills and salaries incurred prior to the date of this Order;

(3) Defend their interests on appeal from this Order;

(4) Pay any expenses, fees or costs as this Court may order.

It is further

ORDERED that the defendant Board commence immediately to wind up their affairs.

It is further

ORDERED that defendants pay all costs.

It is further

ORDERED that plaintiffs shall file any motion for attorneys' fees and expenses under 42 U.S.C. § 1988 within ten (10) days. The motion should be supported by affidavits for the attorneys' ordinary fees, and itemization of time expended and expenses incurred in this litigation. The defendants shall file any objections within ten (10) days after receiving a copy of plaintiffs' motion under § 1988.