Wayne L. MILLSAP, et al.,
Respondents,

v.

Robert J. QUINN, Jr., et al., Appellants.

No. 70688.

Supreme Court of Missouri,
En Banc.

Sept. 23, 1988.

Kevin M. O'Keefe, St. Louis, Howard Paperner, Louis S. Czech, Clayton, for appellants.

Jordan B. Cherrick (Members Bd. of Freeholders), Kenneth F. Teasdale, Thomas Cummings, St. Louis, Thomas W. Wehrle, St. Louis County Counselor, Andrew J. Minardi, Associate County Counselor, Clayton, William L. Webster, Atty. Gen., Simon B. Buckner, Peter Lumaghi, Ass't. Attys. Gen., Jefferson City, James L. Wilson, St. Louis City Counselor, Eugene P. Freeman, Deputy City Counselor, St. Louis, for respondents.

DONNELLY, Judge.

This appeal involves the constitutional validity of article VI, sections 30(a) and 30(b) (collectively, "section 30") of the Constitution of Missouri. We have exclusive jurisdiction. Mo. Const. art. V, § 3.

Petitions[1] to create a Board of Freeholders were filed with the election officials of St. Louis City and County. Following certification of the petitions, section 30[2] required both the mayor of St. Louis and the county supervisor of St. Louis County to appoint nine "electors" to the Board. In addition, the Governor of Missouri was required to appoint one elector to the Board. To this end, Mayor Vincent C. Schoemehl, Jr., County Executive Gene McNary, and Governor John D. Ashcroft, respondents in this action, developed lists of candidates for appointment to the Board. Each developed several criteria by which the candidates were measured. Mayor Schoemehl's crite-

---

1. The petitions read, in part:

    A PETITION to establish a board of St. Louis area property owners (freeholders) to study the governmental structures and responsibilities with St. Louis County and the City of St. Louis. Should a reorganization plan be recommended, there would be a vote of St. Louis County and City residents to determine whether or not they want to accept the plan.

    . . . .

    The undersigned voters . . . do hereby present this petition proposing the exercise of the powers granted to the people of the City of St. Louis and St. Louis County by Section 30 of Article VI of the Constitution of the State of Missouri for the purpose of formulating and adopting a plan to provide for the partial or complete government of all or any part of the County and City.

2. Article VI, section 30(a) provides, in part:

    **§ 30(a) Powers conferred with respect to intergovernmental relations—procedure for selection of board of freeholders**

    Section 30(a). The people of the city of St. Louis and the people of the county of St. Louis shall have power . . . to formulate and adopt any other plan for the partial or complete government of all or any part of the city and the county. The power so given shall be exercised by the vote of the people of the city and county upon a plan prepared by a board of freeholders consisting of nineteen members, nine of whom shall be electors of the city and nine electors of the county and one an elector of some other county. Upon filing with the officials in general charge of elections in the city of a petition proposing the exercise of the powers hereby granted . . . and the certification thereof by the election officials to the mayor, and to the governor, then, within ten days after the certification the mayor shall, with the approval of a majority of the board of aldermen, appoint the city's nine members of the board. . . . Upon the filing with the officials in charge of general elections in the county of a similar petition . . . and the certification thereof by the county election officials to the county supervisor and to the governor, within ten days after the certification, the county supervisor shall, with the approval of the majority of the county council, appoint the county's nine members of the board. . . .

    Section 30(b) contains a similar provision for the appointment of a freeholder by the governor.

ria included a history of community and civic service, leadership ability, intelligence and independence, and geographic and racial distribution. County Executive McNary sought candidates who had no vested interest in a governmental organization in the St. Louis area, showed leadership in the community, had an interest in County problems, would be able to work with other Board members, and represented a geographical mix of the County. Governor Ashcroft's criteria included Missouri residency, no residency in or strong identity with St. Louis City or County, sufficient time to devote to service on the board, and an ownership interest in real property.

The Board members were eventually appointed, and the Board undertook the process of developing a plan for the reorganization of the St. Louis City and County governments. On November 9, 1987, appellant Robert J. Quinn[3] and his counsel met with the Board and informed the members that it was Quinn's belief that the real property ownership requirement for membership to the Board was a violation of the Equal Protection Clause of the U.S. Constitution. The following day, Quinn filed a class action in the United States District Court for the Western District of Missouri, seeking a declaration that section 30 was unconstitutional. The District Court issued a temporary restraining order on January 25, 1988. This order was stayed two days later by the United States Court of Appeals for the Eighth Circuit. On February 11, 1988, the Eighth Circuit dissolved the stay and filed an opinion affirming, with modifications, the temporary restraining order.[4] *Quinn v. Missouri*, 839 F.2d 425 (8th Cir. 1988).

On February 16, 1988, one day before trial on the merits in the District Court, respondents filed an action for declaratory relief in the Circuit Court of St. Louis County. The District Court eventually ruled that the freeholder provision of section 30 was unconstitutional, both on its face and as applied. *Quinn v. State of Missouri*, 681 F.Supp. 1422 (W.D.Mo.1988). However, the Eighth Circuit reversed without opinion on the grounds that the District Court should have abstained from deciding the case pending the outcome of the state litigation. Appellants subsequently filed a counterclaim in the Circuit Court seeking a declaration that Section 30, on its face and as applied, violated the Equal Protection Clause. Appellants also sought to dissolve the Board and enjoin the future enforcement of section 30. Both sides moved for summary judgment, and on May 24, 1988, the Honorable Arthur Litz of the St. Louis County Circuit Court upheld the constitutionality of section 30. This appeal followed.

I.

Appellants contend that sections 30(a) and 30(b) are facially unconstitutional in that both sections require ownership of real property in order to be considered for public office. Appellants contend that such a classification discriminates against persons owning no interest in real property and is not rationally related to any legitimate state interest.

It was stipulated that the list prepared by County Executive Gene McNary was reviewed by his Executive Assistant, William Skaggs, who received an opinion from the County Counselor's office that an additional requirement was an ownership interest in real property, and that following this opinion Skaggs then checked the County Assessor's records to make certain each person McNary had placed on the list of candidates did meet that real property ownership criterion.

It was stipulated that the list prepared by St. Louis Mayor Vincent Schoemehl, Jr., was also reviewed following receipt of an opinion from the City Counselor's office which added the additional requirement of

---

**3.** Mr. Quinn is the Missouri state representative from the 80th District. He is a resident of St. Louis County but owns no real property. In this action, Mr. Quinn represents a class of individuals who are residents of Missouri but who own no real property.

**4.** The Eighth Circuit allowed the Board to continue working on the plan but prohibited any final action or proposal of the plan until disposition by the District Court.

an ownership interest in real property, and that the Reverend Paul C. Reinert did not have an ownership interest in real property. Father Reinert was not considered further for membership on the Board.

It was further stipulated Governor John Ashcroft's candidate for membership on the Board also had to meet, among other criteria, the requirement of an ownership interest in real property.

In *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), appellants challenged a freeholder requirement for membership to a county board of education on the grounds that such a requirement violated the Equal Protection Clause of the fourteenth amendment. The Court first noted that "under Georgia law a 'freeholder' is any person who owns real estate." *Id.*, 396 U.S. at 348, n. 1, 90 S.Ct. at 534, n. 1, 24 L.Ed.2d at 572, n. 1. In addressing whether the freeholder requirement was unconstitutional, the Court stated

> We may assume that the appellants have no right to be appointed to the Taliaferro County board of education. But the appellants and the members of their class do have a federal constitutional right to be considered for public service without the burden of invidiously discriminatory disqualifications. The State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees.

*Id.*, 396 U.S. at 362–63, 90 S.Ct. at 541, 24 L.Ed.2d at 580. The Court held that "the Georgia freeholder requirement must fall even when measured by the traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective." *Id.*, 396 U.S. at 362, 90 S.Ct. at 541, 24 L.Ed.2d at 580.[5]

In *Chappelle v. Greater Baton Rouge Airport District*, 431 U.S. 159, 97 S.Ct. 2162, 52 L.Ed.2d 223 (1977), an East Baton Rouge Parish requirement of "owning property assessed in East Baton Rouge

Parish" as a qualification for service on an airport district commission was held to violate *Turner*.

In our view, however, *Turner* does not control our determination of constitutionality on this appeal, because *Turner* dealt with a unit of local government which had general governmental powers.

## II.

We consider determinative here the cases examining voting qualifications based on real property ownership. They began with *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). *Reynolds* declared that voting is a fundamental constitutional right. Later, *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), established the "strict scrutiny" equal protection review standard, and threw into question all voting schemes based upon the ownership of real property. Two cases, *Avery v. Midland County, Texas*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and *Hadley v. Junior College District*, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), seemed to leave a small crack in the broad holding of *Reynolds* by suggesting that there might be situations where limitations on voting could be permissible. *Salyer Land Company v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), *Associated Enterprises, Inc., v. Toltec Watershed Improvement District*, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), and *Ball v. James*, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981), proved to be these cases.

In *Salyer* the Court upheld a property based voting scheme for a California water district board of directors. In *Associated Enterprises* a Wyoming watershed district's similar property based voting scheme was upheld. In *Ball* an Arizona property based voting scheme involving an agricultural improvement district was upheld.

In our view, it is significant that *Avery, Hadley, Salyer, Associated Enterprises,*

---

5. The Court refused to decide whether a heightened level of equal protection scrutiny was required. However, property ownership has never been defined as a suspect class, and the right to be considered for public service has not been coined a fundamental right.

and *Ball* involved the right to vote, (declared a fundamental right in *Reynolds*), and that all held that such right is protected by the Equal Protection Clause only when the local unit of government in question had general governmental powers. Does it follow that greater protection should be afforded under the Equal Protection Clause when a lesser "federal constitutional right", as in *Turner* and on this appeal, is involved? We think not.

The essential question on this appeal then becomes: Does the Board of Freeholders have general governmental powers which would require application of the Equal Protection Clause?

In Missouri "[t]o govern is to control the workings or operation of, and to determine, guide, and regulate." *State v. Neill*, 397 S.W.2d 666, 669 (Mo. banc 1966). The Board of Freeholders serves only to recommend a plan of reorganization to the voters of St. Louis City and St. Louis County. It "cannot enact any laws governing the conduct of citizens, nor does it administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services". *Ball, supra*, 451 U.S. at 366, 101 S.Ct. at 1818, 68 L.Ed.2d at 160. It can recommend ad valorem property taxes and sales taxes, but it cannot levy and collect them. In sum, the Board of Freeholders has no general governmental powers.

We recognize membership on the Board of Freeholders was restricted to owners of real property. However, we hold that the composition of the Board of Freeholders does not violate the Equal Protection Clause because the Board of Freeholders does not exercise general governmental powers. Since it exercises no general governmental powers, the Equal Protection Clause has no relevancy here.

The judgment is affirmed.

All concur.