Wayne L. MILLSAP, et al.,
Respondents,

v.

Robert J. QUINN, Jr. and Patricia J.
Kampsen, Appellants.

No. 70688.

Supreme Court of Missouri,
En Banc.

March 13, 1990.

Kenneth F. Teasdale, Thomas Cummings, Jordan Cherrick, St. Louis, William L. Webster, Atty. Gen., Simon Buckner, Asst. Atty. Gen., Jefferson City, for respondents.

Kevin O'Keefe, Jess W. Ollour, St. Louis, Mark D. Mittleman, Howard Paperner, Louis S. Czed, Clayton, for appellants.

RENDLEN, Judge.

This cause turns on the validity of Missouri constitutional provision art. VI, § 30, measured against the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

Article VI, § 30(a), permits the City of St. Louis and St. Louis County to reorganize their governmental structure by vote of the electorate upon a plan drafted by a "board of freeholders," "nine of whom shall be electors of the city and nine electors of the county and one an elector of some other county." The section directs that such electors of the city and county be appointed by the Mayor and County Executive, respectively, and under § 30(b) a final member (an elector from another county)

by the governor.[1] Petitions to create such board of freeholders were filed with the election officers of the city and county and when certified the Mayor, the County Executive and the Governor made their respective appointments. *See Millsap v. Quinn*, 757 S.W.2d 591 (Mo. banc 1988). The appointing authorities concluded the term "freeholder" required ownership of real property as a necessary qualification for board membership, and consistent with that determination, removed from consideration at least one landless candidate, replacing him with an appointee satisfying the purported ownership requirement. The board commenced its work September 28, 1987, and continued until filing a proposed plan on September 13, 1988. An election on the plan was initially scheduled for June 20, 1989, but in separate litigation, since dismissed, the election was stayed pending disposition of the current proceedings. *State ex rel. City of Ladue v. St. Louis City/County Board of Freeholders*, Circuit Court of St. Louis County, Cause No. 589490.

In November 1987, after the board had begun meeting, Robert Quinn, Jr. and Patricia Kampsen filed a class action in the U.S. District Court, Western District of Missouri on behalf of all Missouri voters owning no realty, naming as defendants members of the board of freeholders, the Mayor, the County Executive, the Governor, and the State of Missouri. The complaint asserted that § 30, requiring property ownership as a condition for membership on the board, violated the Equal Protection Clause of the Fourteenth Amendment. The defendants in that case, respondents here, then filed an action naming Quinn and Kampsen defendants for a declaratory judgment in the Circuit Court of St. Louis County, asserting the validity of § 30, and the defendants in that suit counterclaimed, raising the issues posited in their federal complaint.

The U.S. District Court, Western District, entered its ruling in favor of Quinn and Kampsen, *Quinn v. State of Missouri*, 681 F.Supp. 1422 (W.D.Mo.1988), but the Eighth Circuit Court of Appeals reversed on grounds that the district court should have abstained. 855 F.2d 856 (8th Cir. 1988). The Circuit Court of St. Louis County then entered judgment finding no violation of the Equal Protection Clause. This Court affirmed without finally deciding the question whether § 30 absolutely imposes a property ownership requirement, holding instead that the Equal Protection Clause was inapplicable to this case because the board exercises no "general governmental powers." 757 S.W.2d at 595. The United States Supreme Court reversed, holding that though this Court "retains the final authority to interpret § 30," there was "no substantial reason to believe that appellees' interpretation might be accepted." ——

1. Section 30(a) provides: "[t]he people of the city of St. Louis and the people of the county of St. Louis shall have power (1) to consolidate the territories and governments of the city and county into one political subdivision under the municipal government of the city of St. Louis; or, (2) to extend the territorial boundaries of the county so as to embrace the territory within the city and to reorganize and consolidate the county governments of the city and county, and adjust their relations as thus united, and thereafter the city may extend its limits in the manner provided by law for other cities; or, (3) to enlarge the present or future limits of the city by annexing thereto part of the territory of the county, and to confer upon the city exclusive jurisdiction of the territory so annexed to the city; or, (4) to establish a metropolitan district or districts for the functional administration of services common to the area included therein; or, (5) to formulate and adopt any other plan for the partial or complete government of all or any part of the city and the county. The power so given shall be exercised by the vote of the people of the city and county upon a plan prepared by a board of freeholders consisting of nineteen members, nine of whom shall be electors of the city and nine electors of the county and one an elector of some other county. Upon the filing with the officials in general charge of elections in the city of a petition proposing the exercise of the powers hereby granted, signed by registered voters of the city in such number as shall equal three percent of the total vote cast in the city at the last general election for governor, and the certification thereof by election officials to the mayor, and to the governor, then, within ten days after the certification the mayor shall, with the approval of a majority of the board of aldermen, appoint the city's nine members of the board, not more than five of whom shall be members of or affiliated with the same political party." A similar provision concerns the appointment of the county's nine members.

U.S. ——, 109 S.Ct. 2324, 2331 n. 9, 105 L.Ed.2d 74 (1989). On that assumption, the Court held that "it is a form of invidious discrimination to require land ownership of all appointees to a body authorized to propose reorganization of local government," *id.* 109 S.Ct. at 2331–32, and accordingly reversed and remanded the cause to this Court. Thereupon the board of freeholders filed here its "Motion for the Issuance of a Final Judgment Affirming the Constitutionality of Art. VI, Section 30 of the Missouri Constitution and Ordering the Governor of Missouri, the Mayor of the City of St. Louis, and the St. Louis County Executive to Appoint New Members to the Board of Freeholders in a Manner Not Inconsistent with the Judgment of the Supreme Court of the United States." [2]

▇▇▇ Against this background, we reach the issue not decided in the litigation until this juncture: i.e., whether the § 30 term "freeholder" means "landowner" and is an indispensable prerequisite for appointment, thus violative of the Equal Protection Clause as construed by the United States Supreme Court. We answer this question in the affirmative, and accordingly reverse and remand the cause to the circuit court for further proceedings consistent with this opinion.[3]

Though our decisional law has not previously interpreted the word "freeholder" in § 30, we find that respondents' proffered interpretation defies tradition and the common understanding of the term. As the U.S. Supreme Court stated, the word "freeholder" carries with it the "usual meaning of land ownership." 109 S.Ct. at 2324.[4] This Court has so construed the term appearing in Mo. Const. art. I, § 26, which provides that compensation for private property taken or damaged for public use is to be ascertained by "a jury or board of commissioners of not less than three *freeholders* (emphasis added)." In *Shively v. Lankford*, 174 Mo. 535, 548, 74 S.W. 835, 838 (1903), the Court concluded the term "freeholder" in that provision means "one who owns a freehold estate; that is, an estate in lands, tenements, or hereditaments of an indeterminate duration, other than an estate at will or by suffrance." *See also Grossman v. Patton*, 186 Mo. 661, 668, 85 S.W. 548, 550 (1905); *Kansas City v. Jones Store Co.*, 325 Mo. 226, 28 S.W.2d 1008, 1016 (1930), *cert. denied*, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771 (1930).[5] Further, we reject respondents' contention that "freeholder" means "elector." Both words are employed in § 30, and "[i]f these terms were intended to have the same meaning the use of only one of them would be necessary, and the other would be surplusage, included for no reason. Such a construction is not favored." *Boone County Court v. State of Missouri*, 631 S.W.2d 321, 325 (Mo. banc 1982). Furthermore, regardless of the true meaning of § 30, it was applied in an unconstitutional manner because at least one otherwise qualified candidate was dropped from consideration because he owned no realty.

▇▇▇ Having concluded the term "freeholder" in Mo. Const. art. VI, § 30, is violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, we now determine if

---

2. The County Executive resigned during the pendency of this litigation in October 1989, but his successor is automatically substituted as a party. Rule 52.13(d).

3. We reject appellants' suggestion that the board has no standing to present its current motion to the Court. When the board filed its motion for declaratory judgment in the trial court, it plainly had standing so to do. The board voluntarily disbanded only because it completed its official duties during the pendency of the litigation, and it most certainly has standing to complete the litigation it began. We find no precedent to the contrary. At the time this action was filed, the board members had a stake in the outcome of the proceeding, and the lawfulness of their plan, as well as the possibility that they may again be called to serve on the board, ride on the outcome of the case.

4. *See Black's Law Dictionary* (5th ed. 1979): freeholder is "one having title to realty;" *Webster's New Twentieth Century Dictionary*: freeholder is "the possessor of a freehold," which is defined as "the holding of a piece of land;" *American Heritage Dictionary of the English Language* (1981): freehold is "[a]n estate held in fee or for life."

5. *See also Farmers Drainage District of Ray County v. Sinclair Refining Co.*, 255 S.W.2d 745, 749 (Mo.1953), wherein the same definition was given in construing § 242.010, RSMo 1949.

this term may be severed from the section, leaving a viable remainder. The test for upholding the balance of the provision after excision of the invalid portion depends on whether the remainder is in all respects complete and susceptible of constitutional enforcement, and one which the people would have nevertheless adopted had they known the excluded portion was invalid. *Simpson v. Kilcher*, 749 S.W.2d 386, 393 (Mo.1988).[6] We find that § 30 meets the test. Only the word "freeholder" is to be struck from the section, and there remains a procedure for appointment of the board members, "nine of whom shall be electors of the city and nine electors of the county and one an elector of some other county." Though "freeholder" is deleted, enforcement of the provision without this term adequately fulfills the purpose of the people to receive and vote upon a reorganization plan; the essential purpose and mode of implementation remain. Further, enforcement of § 30 without the offending term is not inconsistent with prior cases where portions of our state constitutional provisions were found to be offensive to the federal constitution but the remainder was deemed intact.[7]

As the board was invalidly appointed, we hold that a new board must be appointed without property ownership considerations.[8] *See Chappelle v. Greater Baton Rouge Airport District*, 357 So.2d 824, 826 (La.App.1978). In so doing we reject appellants' argument that this relief was not properly requested by respondents and that reappointment cannot be ordered by the Court. The original petition for declaratory judgment in the trial court requested a declaration of the "status, rights, obligations responsibilities (sic) of the Plaintiffs as they relate to §§ 30(a) and 30(b) of Article VI of the Missouri Constitution," and "other orders as are just and proper under the circumstances." In their trial court motion for summary judgment and their original brief in this Court, respondents requested a reappointment procedure in the event § 30 was declared invalid. Consistent with our conclusion is the provision of § 30(b) that "[o]n the death, resignation or *inability of any member of the board to serve*, the appointing authority *shall* select a successor." As provided in § 30(b), the new board shall have one year from the date of the appointment of its final new member in order to set forth its reorganization plan.

The mandate of this Court originally issued in September 1988, having been effectively nullified, is hereby recalled, and the cause is reversed and remanded for entry of judgment consistent herewith.

BLACKMAR, C.J., and HIGGINS, COVINGTON and HOLSTEIN, JJ., concur.

BILLINGS, J., concurs in part and dissents in part in separate opinion filed.

ROBERTSON, J., concurs in part and dissents in part and concurs in concurring in part and dissenting in part opinion of BILLINGS, J.

BILLINGS, Judge, concurring in part and dissenting in part.

I agree with the principal opinion's reasons and conclusion that the "freeholder" provision of the Missouri Constitution violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. I cannot agree that the unconstitutional provision can properly be severed from the section so as to permit the appointment of a new Board. In my view, the "freeholder" requirement taints the entire section. Neither can I agree

6. Though the cited case concerns construction of statutes, the same principle applies to the construction of constitutional provisions. *Buechner v. Bond*, 650 S.W.2d 611, 612 (Mo. banc 1983). *See also Armentrout v. Schooler*, 409 S.W.2d 138, 144 (Mo.1966), where the unconstitutional phrase "free white male inhabitants" was excised from the pertinent statute.

7. We note the provision of Mo. Const. art. IX, § 1(a) (1945), stating that "[s]eparate schools shall be provided for white and colored children," was unconstitutional following the decision of the United States Supreme Court in *Brown v. Board of Education of Topeka*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), but was not repealed until 1976.

8. This is not to say that a current member may not be reappointed, but only that property ownership is not a consideration.

that the petition for declaratory judgment can be construed to permit the appointment of a new Board.

I would reverse the case with directions to enter a judgment for appellants.