**AFFIRMED and Opinion Filed August 24, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-01102-CR**

**EX PARTE SCOTT KENT CHAMBERLAIN**

**On Appeal from the County Court at Law No. 7**
**Collin County, Texas**
**Trial Court Cause No. 007-83088-2020**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Garcia

Scott Kent Chamberlain appeals the trial court's order denying his pretrial application for writ of habeas corpus. Appellant is accused of violating section 42.12 of the penal code which prohibits recklessly discharging a firearm inside the corporate limits of a municipality with a population of 100,000 people or more. *See* TEX. PENAL CODE ANN. § 42.12 (a). In two issues, appellant contends section 42.12 violates the federal and state constitutional guarantees to equal protection under the law. We affirm the trial court's order denying relief.

## BACKGROUND

The information charges appellant did "recklessly discharge a firearm inside the corporate limits of a municipality having a population of 100,000 or more, namely the City of Frisco, by discharging his AR-15 inside his apartment causing the bullet to enter the apartment above the defendant's residence." After he was charged, appellant filed an application for writ of habeas corpus pursuant to article 11.09 of the code of criminal procedure. In his writ application, appellant argued that by criminalizing only reckless discharges of firearms that take place in cities with populations of 100,000 or more, the statute divides people who recklessly discharge firearms into two classes only one of which faces criminal prosecution. Citing census data he provided as an exhibit, appellant contended the legislative determination to criminalize only reckless discharges that take place in larger cities is not rationally related to a legitimate state interest.

The trial court conducted a teleconference hearing on the writ application at which counsel presented argument. The trial court denied relief and this appeal follows.

## STANDARD OF REVIEW

We review a trial court's ruling on a habeas application for an abuse of discretion, viewing any factual determinations in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A defendant may use pretrial habeas to challenge the facial constitutionality of a

statute, but may not use the habeas process to challenge the constitutionality of the statute as applied to the defendant's particular circumstances. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). A facial challenge attacks the statute itself. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). To prevail on a facial challenge, the challenger must establish that the statute always operates unconstitutionally in all possible circumstances. *Salinas v. State*, 464 S.W.3d 363, 367 (Tex. Crim. App. 2015).

When a habeas applicant challenges the facial constitutionality of a statute, that determination is a question of law that we review *de novo*. *Id*. at 366. In conducting our *de novo* review, we presume the statute is valid and that the legislature did not act unreasonably or arbitrarily in creating it. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). We make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza*, 467 S.W.3d at 514. The challenger bears the burden to establish the statute is unconstitutional. *Rodriguez*, 93 S.W.3d at 69.

### ANALYSIS

**A**ppellant contends Texas Penal Code Section 42.12 violates the Equal Protection Clauses of the United States Constitution and the Texas constitution.[1] *See*

---

[1] Appellant organizes his state and federal constitutional challenges as separate issues, but does not provide a separate argument under the Texas constitution. Both parties recognize that the Texas constitution's guarantee of equal protection is considered co-extensive with the federal guarantee and thus may be evaluated under the federal standard. *See Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App.

U.S. CONST. amend. XIV, § 1; TEX. CONST. art. 1, § 3. The Fourteenth Amendment provides in relevant part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The constitutional guarantee of equal protection is "essentially a direction that all persons similarly situated should be treated alike." *Estes v. State*, 546 S.W.3d 691, 697 (Tex. Crim. App. 2018) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The protections afforded by the Equal Protection Clause "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Equal protection "does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966). Thus, in evaluating the challenged statute, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631.

---

2000); *see also Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd) (federal and state guarantees of equal protection are generally co-extensive and appellate court will address issue under federal constitution unless appellant argues Texas constitution provides greater protection). Because appellant does not present a separate argument for the violation of the Texas constitution, we will discuss the issues together and analyze them under the federal constitution.

Appellant contends the statute divides individuals who recklessly discharge firearms into two classes: those who fire their weapons within the boundaries of cities with a population of 100,000 or more and those who fire their weapons in areas that are not within the boundaries of cities with populations of 100,000 or more. Appellant concedes, and we agree, that this classification does not burden a fundamental right nor do persons recklessly discharging firearms constitute a "suspect class" that would elevate the level of scrutiny the statute receives to strict scrutiny. *See Cleburne*, 473 U.S. at 440 (defining suspect classes as those defined by race, alienage, or national origin); *Kiss v. State*, 316 S.W.3d 665, 668 (Tex. App.—Dallas 2009, pet. ref'd) (government may not discriminate against members of class of individuals who have historically suffered discrimination); *see also Dinkins v. State*, 894 S.W.2d 330, 342 (Tex. Crim. App. 1995) (criminal defendants do not constitute suspect class); *Walker v. State*, 222 S.W.3d 707, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (felons are not a suspect class).

Thus, we will uphold section 42.12 if it advances a legitimate government interest even if it seems unwise, works to the disadvantage of a particular group, or the rationale for it seems tenuous. *Romer*, 517 U.S. at 632; *see also Kiss*, 316 S.W.3d at 668 (under rational relationship review, we presume discriminatory classification is valid and uphold classification as long as it bears rational relationship to any legitimate governmental interest).

Appellant contends section 42.12 is unconstitutional because it is not rationally related to a legitimate state interest. Appellant contends that the legitimate state interest at issue is the State's interest in stopping the reckless discharge of firearms. Appellant quotes from the bill analysis for the statute's rationale: "Houston, Dallas, and other heavily populated metropolitan areas are confronted with the problem of citizens recklessly discharging firearms without regard to the safety of the people around them, with no means to regulate them." *See* Bill Analysis, Tex. S.B. 68, 74th Leg., R.S. (1995).

Appellant contends the statute is not rationally related to the State's legitimate interest because it prohibits reckless discharges only in large cities without regard to the density of the cities and without taking into account that some smaller metropolitan areas not covered by the law have even greater population densities, and thus presumably a greater safety risk from recklessly discharging firearms, than the large cities covered by the statute. Appellant further contends that the large cities are frequently interwoven with smaller suburbs into "municipal quilts" where boundary lines are arbitrary and bullets fired from a smaller suburb could easily cross municipal boundary lines and strike someone in a city covered by the statute.

Appellant analogizes the statute to the laws regulating driving while intoxicated and possession of illegal drugs, suggesting the current statute would be analogous to a statute banning driving while intoxicated only in large cities or prohibiting consumption of certain drugs only by males. Appellant contends the

statute cannot be rational unless it generally prohibits the reckless discharge of firearms anywhere and that restricting the law based on population size is an irrational way to stop the reckless discharge of firearms.

The State responds that the statute is rationally related to a legitimate state interest and that appellant's criticisms are really just complaints that the legislature could have drafted a better statute rather than showing that the legislature acted irrationally in drafting the statute it enacted. The State points to the bill analysis appellant admitted into evidence as showing the purpose of the statute was to protect citizens at greater risk of bodily injury and death resulting from the reckless discharge of firearms in places actually experiencing a problem with reckless use of firearms. Using the voluminous information appellant provided to the trial court, the State points out that, while not perfect, larger cities tend to have dense populations and more weapons offenses. The State concludes the legislature could rationally conclude that people living in more populous cities are at a great risk of injury or death from the reckless discharge of firearms.

According to the State, appellant's argument that the legislature should have used population density rather than population to draw the protected areas is merely proposing another way to advance the State's goal. The State concedes that appellant's census data shows some small cities are more dense than some large cities, but contends mathematical precision is not required when drafting a statute. The State also highlights that using population density instead of population brings

its own set of challenges such as the uneven density of urban areas that tend to be divided more between commercial and residential areas than suburbs that tend to have more concentrated residential areas. The State contends appellant asks the Court to focus on exceptions while ignoring the general rule that large cities contain dense concentrations of people.

We agree with the State. Although appellant repeatedly states that section 42.12 is irrational, he provides no authority stating or even suggesting that it is irrational or violates equal protection guarantees to create a category of offenses applying only in large cities. The cases he does cite as authoritative—*Romer* and *Quinn v. Millsap*—are significantly different factually from the present case. In *Romer*, the Supreme Court considered an equal protection challenge to an amendment to the state constitution of Colorado that prohibited all legislative, executive, or judicial action to protect "homosexual, lesbian or bisexual orientation, conduct, practices or relationships . . . ." *See Romer*, 517 U.S. at 624. In finding the amendment unconstitutional, the Supreme Court reasoned that it uniquely "identifies persons by a single trait and then denies them protection across the board." *Romer* is like appellant's hypothetical statute that only criminalizes drug consumption by males. We see no parallel between the present case, which provides for criminal prosecution against any person with any set of personal traits who voluntarily commits a reckless and irresponsible act within the designated municipal boundaries, and the type of pervasive personal discrimination that *Romer* addresses.

In *Quinn*, the Supreme Court considered whether a provision of the state constitution of Missouri mandating that only real property owners could serve on a special board charged with drafting plans to reorganize certain city and county governments violated the equal protection rights of Missouri voters who did not own real property. *See Quinn v. Millsap*, 491 U.S. 95, 96–98 (1989). The Supreme Court concluded that the constitutional provision could not survive rational basis scrutiny because "it is a form of invidious discrimination to require land ownership of all appointees to a body authorized to propose reorganization of local government." *Id*. at 107.

Again, we see no application for *Quinn* in the existing case. There is no rational relationship between owning real property and one's ability to serve on a government board. On the other hand, appellant concedes that stopping deaths and injuries caused by the reckless discharge of firearms is a legitimate state interest. *See Hill v. Colorado*, 530 U.S. 703, 715 (2000) (protecting health and safety of citizens is traditional use of States' police powers and legitimate state interest). In this case, section 42.12 is rationally related to the protection of Texas residents' safety because the statute provides criminal penalties for such behavior and thus attempts to deter such behavior. *See Lopez v. State*, 576 S.W.3d 446, 448 (Tex. App.—Austin 2019, pet. ref'd) (rejecting as-applied equal protection challenge to statute imposing harsher penalties on drug crimes committed within drug-free zones because statute

attempting to deter drug crimes in zones near areas frequented by children rationally related to legitimate government interest of protecting children).

Appellant's argument that a rational statute would use population density as a criterion, or simply apply universally within the state like the DWI laws, does not shift our view that the statute is rationally related to and advances a legitimate governmental interest. *See Romer*, 517 U.S. at 632; *Kiss*, 316 S.W.3d at 668. The legislature chose, for its own reasons, to use population size as a rough proxy for the type of densely populated urban environment where the danger created by recklessly discharging a firearm rises to the point of requiring a criminal penalty.

The fact that appellant can point to a few unprotected suburbs with greater population density than the larger, protected cities they are in proximity with might make the statute imperfect, but it does not make it irrational. According to census data appellant provided, Texas has 1,214 incorporated cities, towns, and villages. Although he did not choose to address the evidence during the habeas hearing, appellant filed an affidavit into the record attaching crime statistics from the FBI on a selection of Texas cities showing weapons offenses are more common in larger cities than in small ones. The bill analysis appellant cited shows the legislature identified and tried to address a problem concentrated in "Houston, Dallas, and other heavily populated metropolitan areas."

To survive an equal protection challenge, a law does not require mathematical nicety and may involve some rough accommodations to solve the practical problems

of government. *See Kiss*, 316 S.W.3d at 668 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). "Above all, a court should spurn any attempt to turn rational-basis review into a debate over the wisdom, eloquence, or efficacy of the law in question." *Estes*, 546 S.W.3d at 698. Appellant's effort to persuade us that the legislature could have potentially drafted a better statute questions the wisdom and efficacy of the statute. *Id.*

We conclude section 42.12 prohibiting the reckless discharge of a firearm in municipalities with populations of 100,000 or more, even if imperfect, is rationally related to the government's legitimate interest in policing behavior that endangers its residents. The law applies to anyone who chooses to recklessly discharge a firearm in one of the prohibited areas. Thus, we further conclude appellant has not shown that the statute violates the constitutional right to equal protection under the law. *See Romer*, 517 U.S. at 632; *Kiss*, 316 S.W.3d at 668. We overrule appellant's issues.

We affirm the trial court's order denying relief on appellant's pretrial application for writ of habeas corpus.

/Dennise Garcia/
_____
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
201102F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE SCOTT KENT
CHAMBERLAIN

No. 05-20-01102-CR

On Appeal from the County Court at
Law No. 7, Collin County, Texas
Trial Court Cause No. 007-83088-
2020.
Opinion delivered by Justice Garcia.
Justices Myers and Partida-Kipness
participating.

Based on the Court's opinion of this date, the order of the trial court denying
relief on appellant's pretrial application for writ of habeas corpus is **AFFIRMED**.

Judgment entered August 24, 2021